**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN  DIVISION**


**U.S. BANK NATIONAL ASSOCIATION ND**                                    **PLAINTIFF**


**V.**                                   **CASE NO. 4:11CV00123 JMM**

**ELENDER ESCROW, INC., ET AL.**                                   **DEFENDANTS**


**ORDER**

Pending before the Court are Motions to Dismiss filed by Defendant PrimeLending,

Defendants Commonwealth Land Title Company ("Commonwealth") and Lawyers Title of

Nevada ("Lawyers Title")[1], Defendant Shelley Hickson ("Hickson"), Defendant Amy Tueckes

("Tueckes"), Defendant Stewart Title Guaranty Company ("Stewart Title"), Defendants

CommerceWest Bank National Association ("CommerceWest") and Judy Pollock ("Pollock"),

and Defendant Jeffery Brown ("Brown").[2]

For the reasons stated below, PrimeLending's (#78), Stewart Title's (#111), Brown's,

(#157), Hickson's (#89), and Commonwealth's and Lawyers Title's (#87) Motions to Dismiss

filed pursuant to Rule 12(b)(7) based upon Plaintiff's failure to name Mark and Carla Gibbs ("the

Gibbs") as a necessary party in violation of Federal Civil Rule of Procedure 19(a) are denied.

---

[1]Lawyers Title has been referred to in the pleadings as both LandAmerica and Lawyers
Title.  For consistency's sake, the Court will refer to this Defendant as Lawyers Title.

[2]In response to all of the Motions to Dismiss, Plaintiff moved for leave to amend should
the Court find its pleading deficient.  However, Plaintiff failed to provide a copy of the proposed
amended pleading as required under Local Rule 5.5.

Brown's (#157), Hickson's (#89), Tueckes's (#96), and CommerceWest's and Pollock's (#120) Motions to Dismiss filed pursuant to Rule 12(b)(2) for lack of jurisdiction are granted and Plaintiff's First Amended Complaint against these Defendants is dismissed.

PrimeLending's (#78) and Commonwealth's and Lawyers Title's (#87) Motions to Dismiss filed pursuant to Rule 12(b)(6) are granted and Plaintiff's First Amended Complaint against these Defendants is dismissed.

Defendant Stewart Title's (#111) Motion to Dismiss is denied in part and granted in part. Plaintiff's negligence *per se* claim stated in the 15th Cause of Action and the negligence claim stated in the 23rd Cause of Action against Stewart Title are dismissed.  Plaintiff's claims against Stewart Title of reformation, promissory estoppel, and negligence as stated in the 16th Cause of Action remain.

I.  *Allegations*

In January of 2009, Morgan Stanley contacted the Gibbs with an offer to refinance their home.[3]  The Gibbs agreed to refinance their home with Morgan Stanley, but were re-directed by Morgan Stanley to Brown, a PrimeLending employee.

Brown completed and submitted a loan application package to Plaintiff for consideration regarding the Gibbs's refinance of their Morgan Stanley Loan.  As a pre-condition of approval, Plaintiff required title insurance.   PrimeLending and Brown notified Plaintiff that they had

---

[3]The Gibbs had previously financed the purchase of their home by executing a $1,510,000.00 promissory note made payable to Morgan Stanley Credit Corporation ("Morgan Stanley Note") and by executing a mortgage on their home located in Pulaski County, Arkansas, to secure that note ("Morgan Stanley Mortgage").

selected Elender Escrow[4] to be the closing agent and title insurance agent for the refinancing.  As

the closing agent, Elender Escrow agreed to comply with the terms contained in Plaintiff's Real

Property Third Party Closing Instructions ("Closing Instructions").  Dana Wombles, an employee

and agent of Elender Escrow, signed the Closing Instruction.

In June of 2009, separate Defendant Netco, Inc., ("Netco")[5] or Elender, or both, issued a

Commitment for Title Insurance and an Insured Closing Protection Letter ("ICPL") which were

underwritten by Stewart Title.

Plaintiff alleges that Arkansas Code Annotated § 23-103-405 which provides for

indemnification to a person against loss of closing funds because of the closing agent's, title

insurer's employee's, or title insurance agency's theft or misappropriation of closing funds is

applicable to this case.

Pursuant to a Broker Agreement, PrimeLending represented and warranted that the loan

application package contained true and valid information and that it would indemnify and hold

Plaintiff harmless from fraud, misrepresentation and any breaches of the Broker Agreement.

In August of 2009, Netco or Elender, or both, issued a second ICPL for the benefit of

Plaintiff and the Gibbs for the refinancing loan which was underwritten by Stewart Title.  Later

that same month at closing, the Gibbs executed a promissory note payable to Plaintiff for

$1,200,000.00 ("US Bank Note") and a mortgage in favor of Plaintiff ("US Bank Mortgage") to

---

[4]Plaintiff's allegations do not consistently differentiate between Elender Services and Elender Escrow in the First Amended Complaint.  Based upon the facts pled, the Court will differentiate between the two when possible.

[5]Plaintiff alleges that Separate Defendants Netco, Inc. d/b/a National Equity Title Company and Netco Title are one in the same.

secure the note.  Plaintiff wired loan funds in the amount of $1,195,652.55 from Minnesota to Elender Escrow's CommerceWest escrow trust account in California.

Funds from Plaintiff's loan and from the Gibbs's private accounts located in Arkansas were deposited in Elender Escrow's account and were to be used by Elender Escrow to pay the Morgan Stanley Note and release the Morgan Stanley Mortgage.  Instead it is alleged that Russell Biszantz took the money for his own use.

On August 28, 2009, Plaintiff's mortgage on the Gibbs's home was recorded.  Elender Escrow's failure to pay off the existing Morgan Stanley Note resulted in Plaintiff's mortgage being in second position to the Morgan Stanley Mortgage.

Plaintiff submitted a claim to Stewart Title for title insurance policy benefits and indemnification under the ICPL on the basis, among others, that Plaintiff's lien on the Gibbs's home was not in first position.

During the time period when the Gibbs were refinancing, Hickson was employed by Lawyers Title and Tueckes was employed by Commonwealth.   Elender Services received business referrals from Hickson and Tueckes.  Settlement services, including escrow services, were referred by Elender Services to Elender Escrow.  Elender Services or Elender Escrow, or both, would then pay a kickback fee to a limited liability company formed and owned by Hickson and Tueckes.  The funds held by this limited liability company were then disbursed to Hickson, Tueckes, Brown, and others participating in the scheme ("Kickback Conspiracy").

Plaintiff contends that Elender Services and Elender Escrow are alter egos and that Defendant Biszantz, who owned these organizations, was the alter ego of both.  In support of their claims, Plaintiff refer to its exhibits K and L, declarations of Wombles and Mark Russell.

Mark Russell declared that during the relevant time period, he owned 50% of Elender Services which engaged in the business of marketing, advertisement, and sales of escrow services conducted by Elender Escrow.  He states that (1) it was after the discovery of Biszantz's conduct in absconding with escrow monies that he relinquished control of Elender Services to Biszantz; (2) Elender Escrow was owned by Biszantz; (3) Elender Escrow engaged in the business of settlement, escrow, and closing services; and (4) while these two companies shared office space, they maintained separate employees, files, and records.

Plaintiff alleges a  second scheme was formed by Elender, Biszantz, and Netco in which Netco agreed to authorize Elender to issue commitments for title insurance, ICPLs, and title insurance which were underwritten by Stewart Title.  Netco agreed to represent that Elender was authorized to conduct closing agent services and that Elender was a valid closing agent.  In exchange, Netco would receive a commission from Elender Services or Elender Escrow ("Title Conspiracy").  On September 5, 2008, the State of California  revoked the authority of Elender Escrow to act as an escrow agent.

After Elender Escrow's license was revoked, Elender Escrow, Biszantz, CommerceWest and Pollock, a CommerceWest employee, entered into an agreement to allow Elender Escrow to continue operating escrow trust accounts.  CommerceWest and Pollock benefitted from allowing Elender Escrow to operate a trust account ("Trust Account Conspiracy").

To compensate for the lost license, separate Defendant Corinthian Title Company ("Corinthian Title"), Elender Escrow, Biszantz, and Bryan Kelly, a Corinthian Title employee, developed a scheme which enabled Elender Escrow to continue to operate. Corinthian Title and Kelly agreed to represent that Elender Escrow was operating under Corinthian Title's escrow

agent license.  Corinthian Title received some form of benefit from Elender Escrow in return for its participation in the scheme ("License Conspiracy").

Plaintiff alleges these conspiracies ultimately allowed Elender to serve as the  escrow agent in the Gibbs's refinancing process which led to the theft by Biszantz and resulted in damages to Plaintiff.

II. *Procedural History*

On October 16, 2009, Plaintiff filed suit against Defendants Elender Escrow, Elender Services, Biszantz, Russell, Wombles, and Does 1 to 10 in the United States District Court for the Central District of California, Southern Division.  Plaintiff's claims against Elender, Russell, Wombles, and Biszantz included intentional misrepresentation, negligent misrepresentation, negligence, breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, constructive fraud, unjust enrichment, conversion, and violation of California Penal Code § 496(c).  Plaintiff sought $1,195,652.55 in compensatory damage, treble damages under California Penal Code § 496(c), and punitive and exemplary damages.[6]  Plaintiff later negotiated settlements with Russell and Wombles.

In April of 2010, the Gibbs filed a complaint in the Eastern District of Arkansas, Western Division, regarding the refinancing of their home.  On June 24, 2010, the Gibbs  filed their Second Amended Complaint ("Gibbs lawsuit") naming Primelending, Stewart Title, Elender Services, Elender Escrow, Netco, Inc., Hickson, Lawyers Title, Tueckes, Corinthian Title,

---

[6]$150,595.01 is currently in the possession of the United States Marshal by Order of the California court which granted a prejudgment writ of attachment brought by Plaintiff while the case was in the California.

Commonwealth, Russell,  Biszantz, Brown, Netco Title, Inc, and Stephanie Dry as Defendants.

The Gibbs based jurisdiction on a federal question pursuant 28 U.S.C. § 1331 and brought claims

of (1) violations of 12 U.S.C. § 2607(a)[7]; (2) fraud; (3) negligence; (4) negligent training,

retention and supervision; (5) civil conspiracy; (6) acting in concert; and (7) breach of fiduciary

duty.

On October 25, 2010, Plaintiff's case in California was "inactivated statistically."  On

December 2, 2010, this Court in the Gibbs lawsuit certified a question of law to the Arkansas

Supreme Court regarding the use of the conspiracy theory of *in personam* jurisdiction.

On December 8, 2010, Plaintiff moved to reopen the case to amend its complaint and

transfer the lawsuit to Arkansas pursuant to 28 U.S.C. § 1406(a) and § 1404.  On January 24,

2011, Plaintiff filed its First Amended Complaint and the case was transferred to the Eastern

District in Little Rock and assigned to United States District Judge Brian S. Miller.

Plaintiff's First Amended Complaint added Defendants PrimeLending, Brown, Netco,

Inc., Netco Title, Inc., Stewart Title, Hickson, Lawyers Title, Tueckes, Commonwealth,

Corinthian Title, Kelly, and CommerceWest and brought claims of (1) intentional

misrepresentation; (2) negligent misrepresentation; (3) negligence; (4) breach of contract;

(5) breach of implied covenant of good faith and fair dealing; (6) breach of fiduciary duty;

(7) constructive fraud; (8) unjust enrichment; (9) conversion; (10) violation of California Penal

Code § 496(c); (11) negligent misrepresentation; (12) negligence *per se*; (13) reformation;

(14) promissory estoppel; (15) intentional misrepresentation/deceit/fraud; (16) negligent hiring

---

[7]12 U.S.C. § 2607(a) prohibits fees or kickbacks for referrals in connection with a real estate settlement service involving federal mortgage loans.

and supervision; (17) conspiracy to commit fraud/deceive; (18) aiding and abetting/acting in concert; and (19) declaratory relief.   Plaintiff based jurisdiction upon diversity pursuant to 28 U.S.C. § 1332.  The First Amended Complaint also stated that based upon the Gibbs lawsuit, this Court has jurisdiction over Plaintiff's lawsuit pursuant to 12 U.S.C. §  2614 and 28 U.S.C. § 1331, and § 1367.

On March 21, 2011, the Gibbs and Plaintiff filed a Joint Motion to Consolidate Cases contending that the pretrial procedures and motions would be identical in each case which had common questions of law and fact and that the cases should be consolidated in the interest of judicial economy.  On July 12, 2011, the Court found that the two cases involved common questions of law and fact and consolidated the cases for administrative purposes only and directed the Clerk to reassign Plaintiff's case to this Court.  The cases were not consolidated for trial purposes.[8]

On August 4, 2011, the Supreme Court of Arkansas found that the use of the conspiracy theory of *in personam* jurisdiction did not violate Arkansas Code Annotated § 16-4-101. Arkansas Code Annotated § 16-4-101 states that Arkansas courts shall have personal jurisdiction to the extent permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

---

[8]The cases were consolidated for administrative purposes so that the Gibbs case could be reassigned to this Court as a related case.  The cases were not consolidated for trial purposes and the Court's Order of July 12, 2011, is amended to reflect that consolidation for trial purposes would result in jury confusion and unfair prejudice to the Defendants.

III.  *Motions to Dismiss*

A.  *Federal Rule of Civil Procedure 19(a) Motions*

PrimeLending's, Stewart Title's, and Brown's motions seek dismissal under Rule 12(b)(7) based upon Plaintiff's failure to name the Gibbs as a necessary party in violation of Federal Rule of Civil Procedure 19(a).  Defendants Hickson, Lawyers Title and Commonwealth adopted this argument in their motions.   Plaintiff responds that because the cases have been consolidated, there is no need to name the Gibbs as parties.

The Court finds Plaintiff's reasoning to be without merit.  Consolidation does not "merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another" *Enterprise Bank v. Saettele*, 21 F.3d 233 (8th Cir. 1994) (citing *Johnson v. Manhattan Ry.*, 289 U.S. 479, 496-97, 53 S.Ct. 721, 727-28, 77 L.Ed. 1331 (1933)). Moreover, contrary to Plaintiff's assertion in his complaint and briefs, (1) this Court does not have jurisdiction over Plaintiff based upon the federal question raised in the Gibbs lawsuit; (2) federal question jurisdiction does not exist pursuant to 12 U.S.C. § 2614 as Plaintiff has not plead a cause of action based upon that statute; (3) federal question jurisdiction does not exist based upon the Federal Declaratory Judgment Act because it is a procedural statute and not a jurisdictional statute; and (4) supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is not applicable as Plaintiff's jurisdiction is based upon diversity.

The issue then is whether the Gibbs are necessary parties. A necessary party is one whose presence in the lawsuit is required because that party's absence would impair the Court's ability to accord complete relief between a plaintiff and a defendant, or the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in the

person's absence may:  (i) as a practical matter impair or impede the person's ability to protect

the interest; or (ii) leave an existing party subject to a substantial risk of incurring double,

multiple, or otherwise inconsistent obligations because of the interest."  Fed. R. Civ. P. 19(a).

PrimeLending argues that the Gibbs are necessary parties because Plaintiff and the Gibbs

each seek to recover the same damages (*i.e.*, the loan proceeds) from Primelending and that the

disposition of the action in the Gibbs absence would leave it "subject to a substantial risk of

incurring double, multiple or otherwise inconsistent obligations because of the interest."

The Gibbs claims against PrimeLending are based upon (1) a § 2607 violation; (2)

misrepresentation/deceit/fraud; (3) negligence; (4) negligence training, retention, and

supervision; (5) civil conspiracy; (6) acting in concert; and (7) conversion.[9]  The Gibbs seeks

damages of three times the amount of settlement charges and brokerage fees for a total of

$62,285.10 pursuant to the § 2607 claim, judgment in the amount of $1,502,089.17, and punitive

damages.

Plaintiff's claims against PrimeLending, Stewart Title, Brown, Hickson, Lawyers Title,

and Commonwealth are based upon (1) negligent misrepresentation; (2) negligence *per se*;

(3) negligence; (4) breach of contract; (5) reformation; (6) promissory estoppel; (7) fraud;

(8) conspiracy; (9) aiding and abetting; (10) intentional misrepresentation; and (11) negligent

hiring and supervision.  Plaintiff seeks damages of no less than $1,195,652.55, punitive and

exemplary damages, judgment interest, and costs.

Based on the claims and alleged damages of the Plaintiff and the Gibbs, the absence of

---

[9]The Gibbs stated in their responses to the motions to dismiss filed in their lawsuit that
they were not bringing civil conspiracy and acting in concert claims as independent causes of
action.

the Gibbs as a party to Plaintiff's lawsuit would not impair this Court's ability to accord

complete relief between the Plaintiff and these Defendants because they are not seeking to

recover identical damages.  Moreover, litigating Plaintiff's claims would not impair or impede

the Gibbs's ability to protect their interest or leave these Defendants "subject to a substantial risk

of incurring double, multiple, or otherwise inconsistent obligations."    Fed. R. Civ. P. 19(a).

Finally, inquiry under Rule 19(a) focuses "on relief between the parties and not on the

speculative possibility of further litigation between a party and an absent person." *LLC Corp. v.*

*Pension Ben. Guar. Corp*., 703 F.2d 301, 305 (8th Cir.1983).  Therefore, it is irrelevant that at

some future time Plaintiff and the Gibbs may have to decide between themselves who is entitled

to damages based upon the US Bank Note.

The Motions to Dismiss are denied.

B.  *Rule 12(b)(2) Motions*

This Court and the Arkansas Supreme Court have held that the acts of one or more co-

conspirators may be shown as evidence against co-conspirators to establish *in personam*

jurisdiction and that application of conspiracy jurisdiction would not violate the Constitution or

Arkansas's long arm statute.  *See Gibbs v. Primelending*, 2011 Ark. 255, 8 (2011); *Gibbs v.*

*PrimeLending*, 2010 WL 4056146 (E.D. Ark. 2010).

 "[A] civil conspiracy is defined as a combination of two or more persons to accomplish a

purpose that is unlawful, or oppressive, or to accomplish some purpose, not in itself unlawful,

oppressive, or immoral, but by unlawful, oppressive, or immoral means."  *Heinemann v. Hallum*,

365 Ark. 600, 232 S.W.3d 420, 426 (2006).

1.  Brown

Plaintiff alleges that Brown participated in the Kickback Conspiracy in violation of federal law.  Plaintiff supports its fraud allegation concerning Brown by referencing declarations made by Wombles and Russell which are attached to the First Amended Complaint as exhibits K and L.  However, Wombles's and Russell's declarations do not make any reference to Brown. Plaintiff's legal conclusion and bare allegations against Brown without any facts to support the allegations are insufficient to support Plaintiff's claim that Brown participated in a conspiracy.

Plaintiff contends that based upon the finding in the Gibbs lawsuit, it is the law of the case that Brown participated in the conspiracy and that this Court has *in personam* jurisdiction over Brown based upon the actions of his co-conspirator PrimeLending.  Plaintiff's lawsuit, however,  must stand on its own merit.  Plaintiff has failed to state sufficient facts to place Brown in a conspiracy whose co-conspirators had sufficient contacts with Arkansas so as to establish conspiracy jurisdiction over Brown.

If there is no conspiracy jurisdiction over Brown, Plaintiff must establish jurisdiction over Brown by alleging minimum contacts with the State of Arkansas.  *See Gibbs v. Primelending*, 2011 Ark. 255, 6 (2011) (to satisfy due process, assumption of personal jurisdiction over nonresident defendant must be based on "minimum contacts" by the nonresident defendant in the forum state).  The First Amended Complaint does not allege any specific incidences of contact Brown had with Arkansas.  It states that (1) he was the loan officer who originated the Gibbs's loan; (2) Brown completed and submitted to the Plaintiff a Uniform Residential Loan Application; and (3) Brown notified the Plaintiff that he and PrimeLending had selected Elender Escrow to be the closing agent.

Brown attached to his Motion to Dismiss as exhibit A, an affidavit he had previously filed in the Gibbs lawsuit.  The affidavit states that his only contacts with the State of Arkansas were by telephone and correspondence, and that he did not solicit or initiate contact with the Gibbs.

This Court finds that based upon the allegations in the First Amended Complaint and Brown's affidavit, Brown's contacts with Arkansas are insufficient to establish "minimum contacts" so as to justify exercise of personal jurisdiction.  *See Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002) ("Contact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."); *Orbit Fluid Power, Inc. v. Connecticut Valley Chipping, Inc.,* 1993 WL 25465 (Ark. App. 1993) (same).

The claims against Brown are dismissed.

2.  Tueckes and Hickson

Tueckes's and Hickson's Motions to Dismiss contend that this Court lacks *in personam* jurisdiction over them because their contacts with the State of Arkansas fail to satisfy the due process requirements of the Fourteenth Amendment of the United States Constitution or Arkansas Code Annotated § 16-4-101(B).

Plaintiff contends that this Court has jurisdiction over these Defendants based upon the Kickback Conspiracy.  Plaintiff argues that the communications of Brown and PrimeLending can be imputed to Tueckes and that one or more of the co-conspirators acts can be imputed to Hickson thereby establishing *in personam* jurisdiction.

Plaintiff contention that the actions of PrimeLending and Brown establish jurisdiction for Tueckes is without merit.  PrimeLending is not named by Plaintiff as a participant in the Kickback Conspiracy and this Court has found that Plaintiff's allegations against Brown were

insufficient to establish him as a member of the relevant conspiracy.

For purposes of finding conspiracy jurisdiction, the remaining alleged co-conspirators are Elender and Biszantz. The Court finds that Elender Escrow's, Elender Services's, and Biszantz's contacts with Arkansas are insufficient to establish the requisite "minimum contacts" to justify exercise of personal jurisdiction over them or conspiracy jurisdiction over their co-conspirators, including Hickson. In sum, conspiracy jurisdiction only applies when at least one of the conspirators has minimum contacts with Arkansas in furtherance of the conspiracy and such contacts have not been pled.

The claims against Hickson and Tueckes are dismissed.

3. CommerceWest and Pollock

CommerceWest and Pollock also argue that they are not subject to suit because this Court lacks *in personam* jurisdiction based on conspiracy jurisdiction and if conspiracy jurisdiction applies, it fails to satisfy the due process requirements of the Fourteenth Amendment of the United States Constitution.

Plaintiff's Trust Account Conspiracy allegations against CommerceWest and Pollock are that (1) after the September 5, 2008, revocation of Elender's escrow license, CommerceWest and Pollock were informed of the revocation; (2) after learning of the revocation, CommerceWest and Pollock were required to close Elender Escrow's trust account, but failed to do so; (3) CommerceWest and Pollock should have refused to accept deposits from Elender and wire transfers from lenders, such as Plaintiff and borrowers/buyers, such as Gibbs; (4) CommerceWest and Pollock entered into an agreement with Elender and Biszantz to allow CommerceWest to continue operating Elender's trust accounts knowing that continuing to do

14

business with Elender and accepting funds were for the purpose of Elender conducting illegal escrow operations; and (5) CommerceWest and Pollock benefitted from the agreement because it received deposits and earned interest and commissions.

Conspiracy jurisdiction will only apply to these Defendants if at least one of them had the requisite minimum contacts with Arkansas.  Plaintiff does not argue that CommerceWest and Pollock had such contacts.  Plaintiff contends that Elender and Biszantz had sufficient contacts with Arkansas establish conspiracy jurisdiction over CommerceWest and Pollock.

Plaintiff alleges that in furtherance of the Trust Account Conspiracy, the Gibbs wired $152,089.65 from Arkansas to Elender Escrow's CommerceWest trust account and that Plaintiff wired $1,195,652.55 from Minnesota to Elender Escrow's CommerceWest trust account. Elender Escrow's trust account was located in California.  There are essentially no other allegations regarding Elender Escrow's or Biszantz's contacts with Arkansas in furtherance of the Trust Account Conspiracy.  The Court finds that the Gibbs's wire of funds to an account in California is insufficient to establish that Elender and Biszantz had the requisite minimum contacts with Arkansas.

The claims against CommonWealth and Pollock are dismissed.

C.  *Federal Rule of Civil Procedure 12(b)(6) Motions*

When analyzing a Rule 12(b)(6) motion, the Court construes the complaint in the light most favorable to the nonmoving party.  *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 715-16 (8th Cir. 2011).  "To survive a motion to dismiss, the factual allegations in a complaint, assumed true, must suffice 'to state a claim to relief that is plausible on its face.'" *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

15

U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

1.  PrimeLending's Motion to Dismiss

PrimeLending alternatively seeks dismissal because Plaintiff has failed to state a claim of

(1) negligent misrepresentation; (2) negligence based upon PrimeLending's duty to ensure that

the closing agent, Elender, was a properly licensed settlement agent; (3) breach of contract; (4)

negligence based upon the choice of the closing agent; and (5) negligent hiring and supervision.

a.  Negligent Misrepresentation

PrimeLending contends that Plaintiff's claim of negligent misrepresentation must be

dismissed as Arkansas does not recognize the tort of negligent misrepresentation.  *See South*

*County, Inc. v. First Western Loan Co.*, 315 Ark. 722, 725, 871 S.W.2d 325 (1994).  Plaintiff

agrees that Arkansas does not recognize negligent misrepresentation as a separate cause of

action.  However, Plaintiff counters this argument by arguing that other defendants contend that

California and Nevada law should be applied in this case and that negligent misrepresentation is

recognized in California and Nevada as a separate cause of action.  Plaintiff contends that

dismissal of this claim is premature until the choice of law issue can be decided.[10]

Under both California and Nevada law, negligent misrepresentation must be pled with the

same specificity required for a claim of fraud.  *See Schuck v. Federal Nat. Mortg. Ass'n*, 2011

WL 2580552 (E.D. Cal. 2011);  *Jung v. BAC Home Loans Serv.*, 2011 WL 2462248 (D. Nev.

---

[10]Because Plaintiff has failed to state a negligent misrepresentation claim under either
Arkansas, California or Nevada law and because the law on negligence, negligent hiring and
supervision, negligence *per se*, breach of contract, and promissory estoppel are the same in
Arkansas, California and Nevada, the Court is not required to address any of the choice of law
issue raised by any of the parties at this stage of the litigation.

2011).  Plaintiff's allegations against PrimeLending regarding the alleged Kickback Conspiracy and the allegations regarding PrimeLending's allegedly choosing Elender as the closing agent are conclusory in nature and lack the specificity required.

Plaintiff's claim of negligent misrepresentation against PrimeLending is dismissed.

b.  Negligence[11]

Plaintiff brings two negligence claims against PrimeLending.  Plaintiff's 12th and 23rd Causes of Action are based upon allegations that PrimeLending designated Elender as the closing agent for the Gibbs's refinancing of their home.  Plaintiff alleges that PrimeLending failed to exercise reasonable care by failing to investigate and advise Plaintiff that Elender Escrow was not a properly licensed closing agent, and by representing to Plaintiff that Elender Escrow and Netco could perform the closing and title services required for the transaction.

"[T]o prove negligence in Arkansas, the plaintiff must show a failure to exercise proper care in the performance of a legal duty, which the defendant owed the plaintiff under the circumstances."  *Kowalski v. Rose Drugs of Dardanelle, Inc.,* 2011 Ark. 44, at 6, ___ S.W.3d __, 2011 WL 478601 (2011); *Ladd v. County of San Mateo,* 911 P.2d 496, 498 (Cal. 1996) (same under California law); *Turner v. Mandalay Sports Entertainment, LLC*, 180 P.3d 1172, 1175 (Nev. 2008) (same under Nevada law).

---

[11]In the Gibbs lawsuit the Court found that based upon the allegations in the Gibbs's Second Amended Complaint that the Gibbs had alleged sufficient facts to state claims against PrimeLending of negligence, breach of fiduciary duty, and negligent training, retention and supervision of Brown.  The finding that Plaintiff's First Amended Complaint fails to state such claims is not in conflict with the finding in the Gibbs lawsuit because the facts alleged in the two lawsuits are different.  As previously stated by the Court, these two lawsuits were consolidated for administrative purposes only and the consolidation did not merge the two complaints.  The Plaintiffs in each lawsuit must rely on their separate allegations to state their claims.

PrimeLending contends that Plaintiff has failed to plead facts which reflect that PrimeLending owed a duty to Plaintiff. The Court agrees. Neither the Broker Lending Agreement or the facts alleged in the First Amended Complaint establish a duty owed by PrimeLending to Plaintiff.

Plaintiff's negligence claim against PrimeLending is dismissed.

c. Breach of Contract

Plaintiff's breach of contract claim is based upon the Broker Lending Agreement in which Plaintiff contends that PrimeLending made representations and warranties concerning Elender. PrimeLending contends that the alleged representations were neither express or implied in either the Agreement or the Loan Application Package. The Court agrees and finds that the contract does not impose the responsibilities asserted by Plaintiff. Therefore there can be no breach. *See Forever Green Athletic Fields, Inc. v. Lasiter Const., Inc.*, 2011 Ark. App. 347, __ S.W. 3d __ (2011) (in breach of contract claim, parties must have entered into a contract); *Oasis West Realty v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (same under California law); *Snyder v. Viani*, 885 P.2d 610, 613 (1994) (breach of contract claim fails when plaintiff fails to allege facts necessary to establish contract).

Plaintiff's contract claim against PrimeLending is dismissed.

d. Negligent Hiring and Supervision

Under Arkansas law, "an employer's liability for negligent hiring rests upon proof that the employer knew or, through the exercise of ordinary care, should have known that the employee's conduct would subject third parties to an unreasonable risk of harm." *Born v. Hosto & Buchan, PLLC*, 2010 Ark. 292, __ S.W.3d __ (2010) (citing *Madden v. Aldrich*, 346 Ark.

405, 415, 58 S.W.3d 342 (2001)); *Deutsch v. Masonic Homes of California, Inc.*, 164 Cal. App. 4th 748, 783-84 at n.19 (2008) (same under California law); *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996) (same under Nevada law).

The Court has already found that Plaintiff's allegations against Brown were insufficient to state a claim of fraud against him.  Thus, PrimeLending cannot have been negligent in hiring or supervising Brown.

Plaintiff's negligent hiring and supervision are dismissed.

2.  Commonwealth and Lawyers Title

Plaintiff brings claims against (1) Commonwealth for negligent hiring and supervision of Tueckes; (2) Lawyers Title for negligent hiring and supervision of Hickson; and (3) Commonwealth and Lawyers Title for negligence based upon their representations to Plaintiff that Elender or Netco, or both, could perform closing and title services.

The allegations are that these Defendants failed to advise Plaintiff that Elender was not a properly licensed closing agent and that Hickson and Tueckes participated in the Kickback Conspiracy resulting in Commonwealth and Lawyers Title being negligent in hiring and supervising their respective employees.  It is Plaintiff's position that Lawyers Title and Commonwealth had a general duty of care not to harm another.

Assuming as true that Hickson and Tueckes participated in the Kickback Conspiracy there are no factual allegations supporting Plaintiff's theory that Lawyers Title or Commonwealth knew or should have known of this scheme.  Moreover, there are no facts to support the theory that Lawyers Title, Commonwealth, Hickson, or Tueckes knew that Elender's authority to act as an escrow agent had been revoked by the State of California.

19

The claims against Commonwealth and Lawyers Title are dismissed.

3.  Stewart Title

Plaintiff makes three claims of negligence, a claim of reformation and a claim for promissory estoppel against Stewart Title.

      a.  Negligence Claims

Plaintiff makes a claim of negligence *per se* (15th Cause of Action) and negligence (16th Cause of Action) based upon Stewart Title's duty and failure to underwrite an ICPL which provided the coverage required by Arkansas law.  Plaintiff also makes a claim of negligence (23rd Cause of Action) based upon Defendant's failure to use ordinary care that a reasonable person under the circumstances of this case would use to avoid harming the Plaintiff and that Plaintiff relied on Defendant's representations that Elender could perform closing and title services.

Stewart Title contends that (1) Arkansas does not recognize a claim for negligence *per se*; (2) there are no facts to support a claim of negligence based upon its duty to underwrite an ICPL which provided for coverage for theft; and (3) Plaintiff has failed to state sufficient facts to state a claim of negligence for failure to use ordinary care under the circumstances of this case.

Stewart Title's Motion to Dismiss the claims of negligence *per se* is granted because in Arkansas a violation of the law does not constitute negligence *per se*, but is only evidence of negligence.  *See Young v. Dodson*, 239 Ark. 143, 148, 388 S.W.2d 94 (1965); *Das v. Bank of America*, 186 Cal. App. 4th 727, 737-38 (2010) (same under California law); *Cervantes v. Health Plan of Nevada, Inc.*, 2011 WL 5110233, at n.4 (Nev. 2011) (same under Nevada law).

Plaintiff has alleged that (1) Stewart Title had a duty under Arkansas Code Annotated § 23-103-405 to underwrite an ICPL which provided coverage for theft and misappropriation; (2) Stewart Title breached that duty by failing to comply with the statute; and (3) that Plaintiff was damaged.  At this stage of the litigation, the Court finds that Plaintiff has stated a claim of negligence because of the duty allegedly created by an Arkansas statute and  the alleged breach of that duty which caused Plaintiff damage.[12]  However, Plaintiff's general claim of negligence set forth in Plaintiff's First Amended Complaint in its 23rd Cause of Action is dismissed as it is simply a recitation of the legal elements of negligence.

### b.  Reformation and Promissory Estoppel

Plaintiff seeks to reform the ICPL (17th Cause of Action) so as to be entitled to coverage of any theft of the closing funds based upon a mistake and alternatively seek damages based upon promissory estoppel (18th Cause of Action) because Stewart Title should have known that Plaintiff would have been reasonably induced to rely on Stewart Title's promise to comply with Arkansas Title Insurance Act.

Stewart Title contends that Plaintiff's claim of reformation is mutually exclusive to the claims of negligence *per se* and negligence and that Plaintiff has failed to state sufficient facts to state a claim of promissory estoppel under the circumstances of this case.

Stewart Title's Motion to Dismiss Plaintiff's reformation claim is denied.  A plaintiff may plead alternative forms of relief.

Moreover, Plaintiff has stated a claim of promissory estoppel.  "Under Arkansas law, promissory estoppel requires that the plaintiff clearly show four elements: '(1) the making of a

---

[12]Defendant Stewart Title did not raise a choice of law issue on this claim.

promise, (2) intent by the promisor that the promise be relied upon, (3) reliance upon the promise by the promisee, and (4) injustice resulting from a refusal to enforce the promise.'" *Curtis Lumber, Inc. v. Louisiana Pacific Corp.*, 618 F.3d 762, 780 (8th Cir. 2010) (quoting *In re Hilyard Drilling Co.*, 840 F.2d 596, 602 (8th Cir.1988)); *Fontenot v. Wells Fargo Bank*, 198 Cal. App. 4th 256, 275 (2011) (same under California law); *Dynalectric Co. of Nevada, Inc. v. Clark & Sulivan*, 255 P.3d 286, 288 (Nev. 2011) (same under Nevada law).   Plaintiff alleges that Stewart Title promised to issue an ICPL which would protect Plaintiff from theft and misappropriation of closing funds, that Stewart Title knew or should have known that Plaintiff would reasonably be induced to rely on that promise, that Plaintiff relied on the promise, and that they suffered an injustice when Stewart Title denied their claim.   Again at this stage of the litigation, the Court finds that a claim has been stated.

Plaintiff's negligence *per se* claim stated in the 15th Cause of Action and the negligence claim stated in the 23rd Cause of Action against Stewart Title are dismissed.   Plaintiff's claims against Stewart Title of reformation, promissory estoppel, and negligence as stated in the 16th Cause of Action remain.

IV.  *Conclusion*

Plaintiff's claims against Brown, Hickson, Tueckes, CommerceWest and Pollock are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

Plaintiff's claims against PrimeLending, CommonWealth, and Lawyers Title are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's negligence *per se* claim stated in the 15th Cause of Action and the 23rd Cause of Action based upon negligence against Stewart Title are dismissed pursuant to Federal Rule of

Civil Procedure 12(b)(6).

With the Filing of this Order the Clerk of the Court is directed to lift the stay entered on

July 26, 2011 (#150).

IT IS SO ORDERED THIS  21   day of   November  , 2011.

`

James M. Moody
United States District Judge